JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| William Silvers et al, | Case No. 2:21-cv-05808-VAP-RAOx |
| Plaintiffs, | |
| v. | **Order GRANTING Motion to Confirm Arbitration Award and DENYING Motion to Vacate or Modify Arbitration Award (Dkt. 1, 33)** |
| Verbata, Inc. et al, | |
| Defendant(s). | |

Before the Court is Petitioners' William Silvers and William Silvers Art ("Petitioners") Motion to Confirm Arbitration Award and Respondents' Verbata, Inc., d/b/a Acme Archives, Sean McLain, and Lisa McLain ("Respondents") Motion to Vacate or Modify Arbitration Award.

After considering all the papers filed in support of, and in opposition to, the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Court **GRANTS** Petitioners' Motion to Confirm and **DENIES** Respondents' Motion to Vacate.

## I. BACKGROUND

The parties are familiar with the background of this dispute. In short, Petitioner William Silvers is an artist who owns Williams Silvers Art, Inc., a Florida corporation which manages the artwork of Petitioner. (Dkt. 1, at 10). Petitioner once worked as an independent contractor with Respondent

1

United States District Court
Central District of California

1    Verbata, Inc. under the 2008 Publishing Agreement, which was signed by

2    Petitioner but not Respondent.  (*Id.* at 8).  The Publishing Agreement

3    included an arbitration clause stating, in relevant part, that any "dispute,

4    claim, demand, or controversy … shall be submitted by the parties to

5    binding arbitration in Los Angeles, California."  (*Id.* at 9).

6

7        A dispute arose under the Publishing Agreement when Respondents

8    claimed that Verbata, Inc. owned derivative work copyrights in art that

9    Petitioner had created while working as an independent contractor.  (*Id.* at

10   11).  Respondents asserted ownership to the art under a supposed 2013

11   work for hire agreement, allegedly signed by Petitioner.  (*Id.* at 12).  As the

12   Arbitrator found, however, Petitioner's signature on the agreement was a

13   forgery, and the fictitious agreement was created as part of a conspiracy

14   among Respondents and a third party.  (*Id.* at 12-13).

15

16       Accordingly, Petitioners initiated a case against Respondents and the

17   third party in 2017 (Case No. 5:17-cv-169-OC-34 PRL) ("Florida Action").

18   (*Id.* at 13).  The suit was filed in the United States District Court, Middle

19   District of Florida, Ocala Division, wherein Petitioner sought a declaratory

20   judgment that the copyrights in certain works of authorship in dispute

21   between the parties were owned by Petitioners.  (*Id.* at 14).  Petitioners also

22   sued Respondents for damages for breach of contract relating to artist

23   proofs, breach of contract for unpaid royalty, breach of consignment art

24   contracts, conversion of art on consignment, conspiracy to commit fraud,

25   and tortious interference with advantageous business with Disney and its

26   affiliated companies.  (*Id.* at 15).

2

After the court in the Florida Action determined it had jurisdiction over Respondents, it entered an order on April 27, 2018, compelling arbitration of the dispute as to the parties hereto only.  (*Id.* at 16).  The 2008 Publishing Agreement provided that arbitration would be conducted in Los Angeles, California.  (*Id.*).  The parties then submitted Petitioners' claims to Judicial Arbitration and Mediation Services, Inc. ("JAMS") as the arbitration forum. (*Id.* at 17-18).

Petitioners' claims as to Respondents were those of the complaint in the Florida Action, as expressed in a JAMS demand for arbitration dated June 11, 2018.  (*Id.* at 18).  Respondents submitted a response and counterclaim for Breach of Contract, Interference with Business Relationships, and Breach of Confidentiality, against Petitioners on July 11, 2018.  (*Id.* at 19).  Petitioners responded to the Counterclaim on July 24, 2018, and a lengthy arbitration was subsequently conducted.  (*Id.* at 20-21).

On June 29, 2021, the Arbitrator entered her Final Award.  (Dkt. 1-1, Ex. 1).  Among other things, the Arbitrator found the above-referenced 2008 Publishing Agreement containing an arbitration clause to be a valid and enforceable agreement.  The Final Award, after providing the legal standard for each issue and making findings of fact, contained the following conclusions:

(1) Declaratory and Injunctive Relief: Petitioner was not entitled to injunctive relief because the contentions upon which Petitioner requested an injunction were based upon speculation, not

evidence.  (*Id.* at 14-15).  Petitioner was entitled to a declaratory

judgment limited to Petitioner's copyright interests in his derivative

works vis-à-vis Acme/Verbata, Inc.  (*Id.*).

(2)  Breach of Contract Relating to Artist Proofs: Petitioner was

entitled to damages for lost profits in the sum of $51,910 for the

285 Artist Proofs units that were not delivered to Petitioner.  (*Id.* at

15-16).

(3)  Breach of Contract (Unpaid Royalty and Damages): Petitioner

was not entitled to damages because Petitioner did not meet his

burden of proving that royalties were underpaid and by what

amount.  (*Id.* at 16-17).

(4)  Breach of Consignment Art Contracts: Petitioner was entitled to

both the breach of consignment contract damages and the same

conversion damages in the amount of $43,847.80.  (*Id.* at 17-18).

(5)  Conversion of Art on Consignment: See above.  (*Id.*).

(6)  Conspiracy to Commit Fraud: Petitioner established a fraud

conspiracy among Respondents and was entitled to compensatory

damages in the amount of $306,794.00.  (*Id.* at 18-23).

(7)  Tortious Interference with Advantageous Business with Disney:

Petitioner did not meet his burden of proving that Acme's conduct

was a substantial factor in interfering with their advantageous

business relationships with Disney.  (*Id.* at 23-24).

## II.    LEGAL STANDARD

"Review of an arbitration award itself is 'both limited and highly

deferential."  *DeMartini v. Johns*, 693 F. App'x 534, 436 (9th Cir. 2017)

4

United States District Court
Central District of California

(quoting *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996)).  A district court will set aside an arbitrator's decision "only in very unusual circumstances."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).  "[C]onfirmation is required even in the face of 'erroneous findings of fact or misinterpretations of law.'"  *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986) (quotation omitted).

Section 10 provides a district court may vacate an arbitration award under the following circumstances: (1) "where the award was procured by corruption, fraud, or undue means;" (2) "where there was evident partiality or corruption in the arbitrators, or either of them;" (3)      "where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."  9 U.S.C. § 10(a)(1)-(4).

The grounds for review provided by Section 10 are extremely limited and "designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures."  *Kyocera Corp v. Prudential-Bache Trade Serv. Inc.*, 341 F.3d 987, 998 (9th Cir. 2003).  These grounds are "the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award."  *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012) (citing *Kyocera*, 341

F.3d 987 (9th Cir. 2003) and *Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008)).  "The burden of establishing grounds for vacating an arbitration award is on the party seeking it."  *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

"Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard [and] a court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11."  *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) (citations omitted).  This standard provides "an extremely limited review authority."  *Kyocera*, 341 F.3d at 998.

## III.   DISCUSSION

### A.  Motion to Vacate

Respondents move to vacate the Award on the basis of arbitrator misconduct and bias in the proceedings, pursuant to Section 10(a)(3) of the Federal Arbitration Act ("FAA").  Section 10(a)(3) provides that a Court may vacate an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C.A. § 10 (West).  Respondents allege three instances of bias and misconduct by the Arbitrator, which the Court addresses in turn.

1.   Increase in Compensatory Damages Award

Respondents contend that the Arbitrator violated Section 10(a)(3) by increasing the Petitioners' compensatory damages award without first allowing Defendants an opportunity to respond.  (Dkt. 33, at 10-14). Respondents also allege that there was insufficient evidence to warrant an increase in damages, and that the Arbitrator's reasoning for increasing the award was "contradictory" to her other rulings.  (*Id.* at 13-15; see also Dkt. 52, at 5-7).  Additionally, Respondents argue the Arbitrator exhibited bias by allowing Petitioners to present certain email evidence, while not allowing Respondents to present that same evidence.  (*Id.* at 15-17).  As to all of these allegations, Respondents fail to meet the burdens imposed by the FAA for vacating an award.

First, Respondents fail to demonstrate that the Arbitrator refused to hear pertinent evidence.  In fact, the record shows that the Arbitrator did allow Respondents to file responsive briefing on the issue of compensatory damages before issuing the Final Award.  As the record reveals, the Arbitrator issued her Interim Award on September 8, 2020.  (Dkt. 33, at 10). Subsequently, Petitioners requested leave to submit a brief pointing the Arbitrator to evidence in the record that they believed she overlooked in determining compensatory damages.  (Dkt. 42, at 9).  Petitioners submitted this brief on October 5, 2020, and on October 22, 2020, the Arbitrator issued an Order specifically directing Respondents to respond to issues raised in Petitioners' brief.  (Dkt. 33, at 12; Respondents' Ex. F, at 1-2).  Respondents filed their Response brief on November 13, 2020.  (Respondents' Ex. J).  It is clear, then, that the Arbitrator collected and reviewed both parties'

briefings on the issue of compensatory damages before the Final Award
was issued on June 29, 2021.

Although Respondents argue there was insufficient evidence to
increase the damages, and they contend the Arbitrator's reasoning was
contradictory, these are not grounds to vacate the Award.  "'Neither
erroneous legal conclusions nor unsubstantiated factual findings justify
federal court review' of an arbitral award under the FAA."  *Aspic Eng'g &*
*Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th
Cir. 2019) (citing *Bosack,* 586 F.3d at 1102).  Even "[m]anifest disregard of
the facts is not an independent ground for vacatur in this circuit."  *Coutee v.*
*Barington Capital Group, L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003).
Respondents' briefing merely attempts to relitigate the matter based solely
on a conclusion not to their liking.

Moreover, Respondents fail to demonstrate that the Arbitrator
exhibited bias in her consideration of the email evidence.  "Before a court
can vacate an arbitration award because of 'evident partiality' on the part of
the arbitrator, the party alleging bias must establish facts that create 'a
reasonable impression of partiality.'"   *Toyota of Berkeley v. Auto.*
*Salesman's Union, Loc. 1095, United Food & Com. Workers Union*, 834
F.2d 751, 756 (9th Cir. 1987), amended, 856 F.2d 1572 (9th Cir. 1988)
(citation omitted).  Here, Respondents present no facts that suggest
partiality; on the contrary, the Arbitrator explained that Petitioners were
permitted to rely on the email evidence because they were using it for a very
different purpose than Respondents (who were attempting to speculate

about why the email was sent).  (Respondents' Ex. C, at p. 832-835; Dkt. 33, at 16).  The Arbitrator's decision on this matter is not evidence of bias under the FAA.

2.   Burden on Punitive Damages

Respondents also allege their rights were violated because the Arbitrator imposed an unfair burden of proof with regard to punitive damages.  (Dkt. 33, at 17).  Specifically, they allege the Arbitrator erroneously required Respondents to "determine what documents they had or could obtain which would be sufficient evidence of financial condition," rather than placing the burden on Petitioners to request what financial discovery they needed, as California law requires.  (*Id.* at 17-21).

The record does not support Respondents' version of events: instead, it shows that Respondents failed to produce sufficient documents related to their financial condition, even when the Arbitrator ordered them to do so. (Respondents' Ex. P, at 1; Ex. Ex. R, at 2).  Nonetheless, even if the Arbitrator had misapplied California law and reversed the burden of proof on punitive damages, it would not be grounds to vacate the Award.  Courts cannot vacate an award for "a mere error in the law or failure on the part of the arbitrators to understand and apply the law."  *Collins*, 505 F.3d at 879 (citation omitted); *see Collins v. D.R. Horton, Inc.*, 361 F.Supp.2d 1085, 1100 (D. Ariz. 2005), aff'd, 505 F.3d 874 (9th Cir. 2007) ("Absent evidence . . . reliably demonstrating that the arbitrator actually misapplied the relevant law and did so with knowledge of the error of that action and/or the intention to

nullify the law or an awareness that he was doing so, vacatur is not appropriate.").

### 3.   Refusal to Allow Amendment of Counterclaim

Finally, Respondents argue the Arbitrator refused to hear pertinent evidence by not allowing them to amend their counterclaim and introduce a related declaration.

Respondents do not meet their burden of showing the award should be vacated.  The record shows that the Arbitrator fully considered Respondents' Motion to Amend Counterclaim, and ultimately denied it because Respondents were "on notice of the information necessary to bring this claim as early as July 2017 . . . ", yet they "wait[ed] until March 6, 2020, on the last day of the arbitration hearing . . . at a time when [Petitioners] had neither the information nor the opportunity to respond."  (Dkt. 42, at 20).

Similarly, the Arbitrator did not allow the evidence Respondents offered (a declaration) because it had not been disclosed in discovery or exchanged in advance, in violation of JAMS Rule 17.  (Petitioners' Exhibit Y, TR 2280:13-16).   The Arbitrator was well within her rights to exclude this evidence.   "Arbitrators enjoy 'wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit.'" *U.S. Life Ins. Co.,* 591 F.3d at 1175 (citing *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1444 (11th Cir.1998)).

For the foregoing reasons, Respondents' Motion to Vacate the Arbitration Award is **DENIED.**

### B.   Motion to Modify

Respondents request, in the alternative, that the Court modify the Award "to return back to the Arbitrator's rulings and award of compensatory damages set forth in the September 8, 2020 Interim Award which was based on both sides' submissions and closing briefs. . . ." (Dkt. 52, at 12).  Section 11(a) provides that an award may be modified or corrected "where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award."

Respondents again fail to meet the applicable legal standard. Respondents fail to articulate how the Arbitrator made a mistake or miscalculation that would warrant correction of the Award aside from their general disagreements with the Arbitrator's final findings, as addressed above.  There is no "technical error," *Kyocera*, 341 F.3d at 997-98, for the Court to correct.  The Arbitrator's calculations were accurate, based on the reasoning she provided.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Burke*, 741 F. Supp. 191, 193 (N.D. Cal. 1990) (holding that there was no evident material miscalculation even though evidence essential to the calculation was not admitted).  Accordingly, the Court **DENIES** Respondents' request to modify the award.

### C.   Petitioners' Motion to Confirm

      "Pursuant to the Federal Arbitration Act (FAA), we 'must' confirm an arbitration award unless we vacate, modify, or correct the award as prescribed in 9 U.S.C. §§ 10 and 11." *Aspic Eng'g & Constr. Co,* 913 F.3d at 1166 (citing *Bosack,* 586 F.3d at 1102). Accordingly, the Court **GRANTS** Petitioners' Motion to Confirm the Arbitration Award.

## IV.    CONCLUSION

      The Court therefore **GRANTS** Petitioners' Motion to Confirm and **DENIES** Respondents' Motion to Vacate.

**IT IS SO ORDERED.**

Dated:    11/10/21

                                   Virginia A. Phillips
                               United States District Judge

United States District Court
Central District of California